ZEITINGER v. HACKWORTH *et al.*, *Appellants.*

Division One, November 6, 1893.

**Trespass on Land: POSSESSION.** The judgment in this cause, which was an action for trespass on lands, reversed because of the failure of the evidence to show the necessary possession to support the action.

*Appeal from Wayne Circuit Court.*—HON. J. L. THOMAS, Judge.

REVERSED AND REMANDED.

*Charles D. Yancy* for appellants.

(1) All of the deeds offered in evidence by the plaintiff, if supported at all, were supported by the register of lands' deed for delinquent taxes, which

being void on its face, could not operate to pass a title. *Moore v. Harris,* 91 Mo. 616; *Large v. Fisher,* 49 Mo. 306. (2) Title could not have been acquired by adverse occupation, for no one ever occupied it so long as ten years continuously, and it has not been occupied at all by any one since 1883, by residing upon it, enclosing or cultivating any part of it. *Dalby v. Snuffer,* 57 Mo. 294; Sedgwick & Wait on Trial of Land Titles, sec. 747. (3) And even if these deeds amounted to color of title, the title thereby acquired could not, short of ten years, vest a right in the occupying claimant to any more than so much as was actually reduced into actual possession. *Bradley v. West,* 60 Mo. 33; *Chapman v. Templeton,* 53 Mo. 463; *Norfleet v. Hutchins,* 68 Mo. 597; Cooley's Constitutional Limitations, 135, 136, and cases cited; *Crispen v. Hanavan,* 50 Mo. 536, 550. (4) In order to acquire a title by adverse occupation the occupying claimant must take possession of, at least a part, claiming the whole, exercise the usual and ordinary acts of ownership over the whole, claiming it as his own for a period of ten years, before the title of the true owner can be divested. *Hickman v. Link,* 97 Mo. 482–495; *Dalby v. Snuffer,* 57 Mo. 294.

*Raney & Carty* for respondent.

BLACK, P. J.—This was an action of trespass for entering upon the west half of the southwest quarter of section 5, township 29, range 4, in Wayne county, and carrying away timber trees, alleged to be of the value of $600. The jury found for plaintiff in the sum of ten dollars, and the defendant appealed.

The case turned upon the question of title. The plaintiff put in evidence a tax deed from the register of lands to Joel D. Lewis, dated in December, 1863. The court held this deed to be void as a conveyance, but good as color of title, so the plaintiff's title

depends upon the question whether he and those under whom he claims have acquired title by ten years adverse possession.

The real question in the case is, whether the demurrer to the plaintiff's evidence should have been sustained. As the demurrer was interposed and over-ruled at the close of plaintiff's evidence and the defendants thereafter introduced their evidence, we must consider the demurrer in the light of all the evidence in the case.

Besides the deed before mentioned the plaintiff put in evidence the following deeds, which are in due form and properly described the land: Joel Lewis to John Kerr, dated August 2, 1869; John Kerr to John Long, dated October 5, 1869; John Long to Joseph Raney, dated January 12, 1877; Joseph Raney to James McAllister, dated February 10, 1879; James McAllister to Joseph Raney, dated February 6, 1880; Joseph Raney to Frank Raney, dated twenty-third of March, 1882; Frank Raney to Anthony Zeitinger, dated January 16, 1883; and Anthony Zeitinger to Anthony F. Zeitinger, the plaintiff, dated twelfth of December, 1887.

Joseph Long, who received the deed from Kerr, dated fifth of October, 1869, testified that he moved upon the land in that year, cleared seven or eight acres, built a cabin and lived there six or seven years and then sold to Joseph Raney. This deed, it will be seen, bears date January 12, 1877. Joseph Raney conveyed to James McAllister in February, 1879. McAllister says he was in possession of the land, that he found his title was not good and he conveyed the land back to Joseph Raney. This deed it will be seen bears date in February, 1880. Frank Raney testified that he worked an iron mine on the land about 1882 or 1883, while his brother Joseph owned it, that his brother

then had a tenant on the land by the name of Mrs. Goodbread, and that seven or eight acres were cleared. A small cabin, a small barn, and bearing peach trees then stood on the cleared part. Other evidence shows that this tenant was on the land under Joseph Raney in 1880. It does not appear that the land or any part of it has ever been enclosed by a fence of any kind.

The plaintiff to make out ten years of continuous adverse possession must begin with the possession of Long in 1869; for there is no claim of ten years' adverse possession since 1880. There is no evidence of actual possession from the time Long conveyed to Joseph Raney in January, 1877, to the time the latter conveyed to McAllister in February, 1879. It is shown that Joseph Raney never lived upon the land, and there is no evidence showing or tending to show that he made any use of it during that period of two years. Indeed we find no evidence of possession by anyone during that time. This break of two years in the possession is not aided by the testimony produced by the defendants, for their witnesses are positive that there was a period of two or three years during which the land was in the possession of no one. On the evidence preserved by this record, the demurrer thereto should have been sustained. The judgment is reversed and the cause remanded. All concur.